**Frank J. GUINAN, Appellant,**

v.

**William ARMONTROUT, Appellee.**

**No. 89–2301.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1990.

Decided Aug. 3, 1990.

Rehearing and Rehearing En Banc Denied Sept. 19, 1990.

an instruction questionable.

W. Edward Reeves, Kansas City, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before ARNOLD, FAGG, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Frank J. Guinan appeals from the District Court's[1] denial of his petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (1982). Guinan was convicted by a jury of capital murder in connection with the murder of a fellow inmate at the Missouri State Penitentiary. Guinan and another inmate entered the victim's cell and repeatedly stabbed him with "knives" fashioned out of one half of a pair of scissors. The jury sentenced Guinan to death. Guinan's conviction and sentence were affirmed on appeal, *State v. Guinan*, 665 S.W.2d 325 (Mo.) (en banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), and his motion for post-conviction relief pursuant to Missouri Supreme Court Rule 27.26[2] was denied. *Guinan v. State*, 726 S.W.2d 754 (Mo.Ct.App.1986), *cert. denied*, 484 U.S. 873, 108 S.Ct. 210, 98 L.Ed.2d 161 (1987). In the present appeal

Guinan argues: (1) the trial court's denial of his pretrial motion for a state-sponsored psychiatric evaluation resulted in a denial of due process; (2) his trial counsel was ineffective in failing adequately to investigate possible mitigating evidence, specifically Guinan's mental state and the testimony of family members; (3) the penalty-phase jury instruction concerning mitigating factors violated his Eighth Amendment rights as it did not comport with *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); and (4) improper remarks by the prosecutor during closing argument violated his Eighth Amendment rights. We affirm the District Court's denial of habeas relief.

I.

■ Guinan's first ground for habeas relief alleges that the trial court committed plain error in denying Guinan's pretrial motion for a psychiatric evaluation in violation of his due process rights. We do not agree.

■ At the outset, we note that the state argues vigorously that this issue is procedurally barred because it was not properly presented to the state courts and, accordingly, must be dismissed unless Guinan can demonstrate both adequate cause excusing his failure to raise the claim in state court and actual prejudice resulting from a federal court's refusal to address the merits of the claim. *See Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). The state separates Guinan's claim of trial court error into three discrete claims: the "insanity claim," alleging that the denial of a psychiatric examination violated due process as it deprived Guinan of a possible insanity defense; the "competency claim," alleging that the mental exam was necessary to determine whether Guinan was competent to stand trial; and the "mitigation claim," alleging a due process violation because

---

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

2. Rule 27.26 was repealed effective January 1, 1988. Post-conviction relief is now available under Missouri Supreme Court Rule 29.15.

Guinan was deprived of possible mitigating evidence relating to his mental state at the time of the murder. The record indicates that the insanity and mitigation claims were raised by Guinan in his initial Rule 27.26 motion and were found to be without merit. On appeal of his 27.26 motion, Guinan seems to have advanced only the competency claim. The state appellate court noted the discrepancy, but because evidence regarding the competency claim was introduced at the hearing on the 27.26 motion and the hearing court addressed the issue in its findings and conclusions, the appellate court treated the 27.26 motion as amended to conform to the evidence and addressed the competency issue. *Guinan,* 726 S.W.2d at 756–57. In his habeas petition, Guinan raised the insanity and mitigation aspects of his due process claim and the District Court addressed both issues despite the state's contention that they were procedurally barred because they were allegedly abandoned in the state court. Based on this record, the state urges us to hold that the insanity and mitigation claims are procedurally barred from federal review. We decline to do so.

A federal court may consider the merits of a claim made in a habeas corpus petition if the petitioner has fairly presented to the state courts the substance of his claim. *Buckley v. Lockhart,* 892 F.2d 715, 718 (8th Cir.1989) (citing *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982)), *cert. denied,* — U.S. —, 110 S.Ct. 3243, 111 L.Ed.2d 753 (1990). In substance the three claims are obviously closely related and evidence concerning all three of them was presented to the Rule 27.26 trial court. Significantly, the legal analysis to be applied by this Court to Guinan's due process claim is the same regardless of which of the discrete aspects of the claim we address. *See Buckley,* 892 F.2d at 719 (holding that petitioner's federal habeas claims of ineffective assistance of counsel were procedurally barred because "the same facts and legal theories are not at issue in [petitioner's] various petitions"). Because of the serious nature of the penalty imposed in this case and the obvious interrelation of each aspect of Guinan's asserted due process violation, we conclude that the due process claim as a whole was adequately presented to the state courts and we shall address the mitigation and insanity aspects of this claim as necessary for a resolution of the issue.

In *Ake v. Oklahoma,* 470 U.S. 68, 83, 105 S.Ct. 1087, 1096, 84 L.Ed.2d 53 (1985), the Supreme Court held that the denial of an indigent defendant's request for a psychiatric evaluation violates due process "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." This Court has held that in order to establish that an expert is necessary, a defendant must demonstrate a reasonable probability that the requested expert would aid in the defendant's defense and that the denial of expert assistance would result in an unfair trial. *United States v. Saint John,* 851 F.2d 1096, 1098 (8th Cir.1988); *Little v. Armontrout,* 835 F.2d 1240, 1244 (8th Cir. 1987) (en banc), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). We assume *arguendo,* without deciding, that a defendant charged with capital murder has a similar due process right to expert assistance if his mental state is to be a "significant factor" at the sentencing phase of trial.

Applying the above standard to the facts of this case, we conclude, as did the District Court, that this claim provides Guinan with no basis for habeas relief. Guinan did not demonstrate to the trial judge that his mental state was likely to be a significant factor at trial or at sentencing. In support of his pretrial motion for a mental examination, counsel for Guinan presented three factors: Guinan's history of violent crime, the brutality of the crime with which he was charged, and counsel's belief that Guinan suffered from a mental disease—a belief trial counsel explained at the Rule 27.-26 hearing was based on the above two factors and the difficulty counsel experienced communicating with Guinan. Trial Transcript at 6–7; Transcript of Rule 27.26 Hearing at 34. These factors alone clearly do not establish that Guinan's mental state was likely to be a significant issue in his

case. The first two factors essentially argue for a per se rule requiring a mental evaluation in any case involving a defendant with a history of violent crime charged with yet another violent crime. Our cases have not adopted such a per se rule and we categorically decline to do so here. The third basis, not supported by example or more detailed explanation, cannot be said to have demonstrated to the trial judge that Guinan's mental state was to be a significant issue at trial or at sentencing. We conclude that the trial court's denial of Guinan's pretrial motion for a state-sponsored psychiatric evaluation did not deprive Guinan of due process.

## II.

■ Guinan next argues that his retained trial counsel was ineffective in not introducing evidence of Guinan's mental state or the testimony of family members as mitigating evidence at the sentencing phase of trial. These claims were raised in Guinan's 27.26 motion and Guinan's counsel testified at the hearing held on the motion. Both the hearing and appellate courts found the claims of ineffectiveness to be without merit. *See Guinan v. State,* 726 S.W.2d at 758. The District Court ordered a psychiatric evaluation of Guinan and heard considerable testimony at the habeas hearing from the doctors who conducted the exam. The court also heard testimony from Guinan's mother and sister regarding their discussions with Guinan's counsel prior to the trial and the content of their potential mitigating testimony. After considering this evidence and the trial record, the District Court concluded that Guinan's counsel was not constitutionally ineffective. We agree with the District Court's conclusion.

■ The issue of ineffective assistance of counsel presents a mixed question of law and fact, and as such this Court may conduct its own independent review of the District Court's conclusions. *Laws v. Armontrout,* 863 F.2d 1377, 1381 (8th Cir. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989). Any factual findings rendered by the state court are presumed to be correct "unless conditions exist which cast those findings into doubt." *Id.;* 28 U.S.C. § 2254(d). As always, we review the District Court's findings of fact under the clearly erroneous standard.

■ The now familiar two-part test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), governs claims of ineffective assistance of counsel. A defendant must show both that his counsel was deficient in that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, 104 S.Ct. at 2064, and that counsel's errors so prejudiced defendant "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. This Court's review of counsel's performance is "highly deferential," and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. With these considerations in mind, we turn to Guinan's claim of ineffectiveness at the sentencing phase, addressing first his contention that evidence regarding his mental state ought to have been investigated and introduced, and then his claim that counsel should have called family members to testify.

### A.

Guinan argues that his trial counsel was ineffective both in not adequately investigating and supporting his pretrial motion for a mental evaluation and in not introducing mitigating evidence regarding Guinan's mental state at the sentencing phase of trial.

With regard to the first contention, we have already mentioned the factors presented to the trial court in support of counsel's motion for mental evaluation: Guinan's history of serious violent crime, the seriousness of the crime with which he was charged, and the fact that counsel "question[ed] his competency." Trial Transcript at 6–7. At the hearing on Guinan's

27.26 motion, Guinan's counsel elaborated and explained that he moved for the examination because he knew of Guinan's considerable history of alcohol and narcotic abuse and because he was having trouble eliciting specific responses from Guinan in his discussions with him. Transcript of Rule 27.-26 Hearing at 22, 34. Counsel also testified that in addition to the statements on the record, there was discussion between counsel and the trial judge in which counsel made it clear he "was certain about the motion" and "thought it should be granted." *Id.* at 24. While we concede that counsel could have been more forceful or specific in detailing the factors underlying his motion for a state-sponsored mental exam, we do not believe that counsel's actions can be termed constitutionally deficient. Guinan's counsel informed the judge that he felt a mental evaluation was warranted and necessary due to Guinan's violent and sometimes erratic behavior; the judge in his discretion denied the motion. Counsel's actions were well within the parameters of reasonable professional assistance guaranteed by the Sixth Amendment.

A more difficult question is presented regarding Guinan's claim that counsel was ineffective for not investigating or presenting potentially mitigating evidence concerning Guinan's mental state. Counsel testified that he did not seek a privately funded psychiatric evaluation because Guinan was indigent and his family could not afford to have the examination performed. At the habeas hearing held by the District Court, however, Guinan's mother testified that counsel never mentioned the possibility of hiring a psychiatric expert and that if he had she "guessed" she would have been willing to pay for it. Transcript of Evidentiary Hearing at 74. The specific factual questions of whether money was available to fund a psychiatric examination and whether Guinan's counsel ever discussed this issue with Guinan's family never has been answered by a state court or the District Court and we do not attempt to resolve these issues. We assume for the purposes of this discussion that Guinan's counsel knew there were funds available for a psychiatric evaluation and yet did not discuss the possibility of hiring this type of expert assistance with Guinan or Guinan's family. Assuming, without deciding, that this conduct was deficient, we conclude that Guinan was not prejudiced by the omission of evidence regarding his mental state. To establish prejudice at the sentencing phase of trial, Guinan must demonstrate a "reasonable probability" that the jury would not have imposed the death sentence if evidence of his mental state had been introduced. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Our review of the record convinces us that Guinan cannot meet this burden.

The District Court ordered a psychiatric evaluation of Guinan and heard considerable testimony from the psychiatrist and psychologist who conducted the examination. The experts were asked to render an opinion regarding Guinan's present mental state as of June 1988—the date of the evaluation, some seven years after the commission of the murder—and his past mental state, both at the time of the crime and at trial. As part of the evaluation process, the doctors interviewed Guinan on several occasions, reviewed the transcript of trial and sentencing, and examined Guinan's medical records from the penitentiary. The forensic evaluation diagnosed Guinan as having an antisocial personality disorder and the psychiatrist explained this diagnosis at the habeas hearing.

> This is a diagnosis that does not infer a severe mental disease. It's really personality characteristics that meet certain criteria.... And the antisocial personality is dependent on a number of factors including such things as difficulty with the law at a fairly early age; being sometimes aggressive, impulsive, unreliable in maintaining employment; getting in trouble with the law again at early age.

Transcript of Evidentiary Hearing at 18. The witness described this disorder as "a persistent condition that usually is quite resistent to any type of treatment," and noted that it was probably present at the time of the murder. *Id.* at 19. The evaluation also characterized Guinan as an over-

controlled individual and the psychologist testified this meant Guinan "may bottle up his frustrations rather than finding some way of dispelling them and then after they have kind of accumulated for a period of time, they burst forth in an overly aggressive an inappropriate way." *Id.* at 41. The examiners noted that Guinan's history indicated he had a problem with alcohol abuse both in and out of prison. The evaluation concluded that Guinan currently was not suffering from any major mental illness or defect. Forensic Evaluation at 6.

While conceding that retrospective opinions cannot be rendered with the same degree of certainty, the examiners stated that "the available background records provide no basis for inferring that at the time of the murder in January, 1981, Mr. Guinan was suffering from a mental illness," and in their opinion, "no mental illness or defect prevented Mr. Guinan from appreciating the wrongfulness of his conduct." Forensic Evaluation at 5. Based on Guinan's rational and relevant—albeit minimal—verbalizations at trial and sentencing, and their discussions with Guinan in which he was able to recall the circumstances of his trial and what transpired, the examiners also concluded that Guinan was competent at the time of his trial and was not suffering from any mental disease or defect at that time. *Id.* at 5–6. The psychologist explained that it was unlikely that Guinan ever was psychotic because

> if a person has a psychotic tendency in the past you're likely to see some residual symptoms or some residual signs of vulnerability to psychosis and they just weren't there. Mr. Guinan was quite appropriate in his inneractions [sic] with us. There was no inability for him to understand or to communicate. His sentences and his speech were rational and relevant. There was no suggestion of thought disorder or possible schizophrenia. Many times if you have a schizophrenic person who is in what we can say remission there are some residual signs that they have a major underlying mental illness and none of that was present with Mr. Guinan when he spoke to us. Transcript of Evidentiary Hearing at 50.

In sum, there is simply no evidence in the record or the psychiatric evaluation to suggest that Guinan's mental problems can be characterized as anything more than personality disorders evidenced by violent and inappropriately aggressive behavior. We suspect that most capital murder defendants are likely to fit this personality profile. Whether evidence of this type would be considered mitigating by a jury is highly doubtful. The psychiatric evaluation portrays Guinan as an individual prone to violent outbursts due to an aggressive personality disorder which is extremely resistant to treatment. The jury was aware of Guinan's extensive history of violent criminal episodes. Evidence of an antisocial personality disorder might very well have reinforced the state's position that Guinan was a dangerous individual, incapable of rehabilitation in the prison system.

Even if we view the psychiatric evaluation as mitigating evidence, we must view it in the context of Guinan's sentencing as a whole. The jury returned the death sentence after finding three statutory aggravating circumstances: (1) Guinan had "a substantial history of serious assaultive criminal convictions," Mo.Rev.Stat. § 565.012.2(1) (1980 Supp.); (2) the murder "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, or depravity of mind," *id.* at § 565.012.2(7); and (3) that at the time of the murder, Guinan was in lawful custody, *id.* at § 565.012.2(9).[3] After carefully reviewing the record and the psychiatric evaluation, we cannot say that the lack of evidence regarding Guinan's mental state undermines our confidence in the outcome of the sentencing determination.

### B.

■ Guinan also contends his counsel was ineffective for failing to call certain

---

**3.** The statutory provision governing aggravating and mitigating factors is now Mo.Rev.Stat. § 565.032 (1986).

family members to testify concerning his difficult childhood and his history of problems with alcohol. This claim was raised in Guinan's 27.26 motion and found to be without merit. The state court found that Guinan's counsel made a strategic decision not to offer any evidence at the sentencing phase.

> Movant's counsel conferred with movant's family at length about appearing at the punishment phase of trial ... Counsel determined that to put on any witness during the punishment phase would be detrimental to movant's case. He said that he could not figure a way to put on any witnesses without the details of movant's twelve prior felony convictions, and in particular one assault, coming out.

*Guinan v. State,* 726 S.W.2d at 758. Guinan argues that we should ignore this finding because it is refuted by the evidence adduced by the District Court. We disagree.

No member of Guinan's family testified at the 27.26 hearing. The transcript of the hearing indicates that Guinan was granted several continuances, partly to enable him to contact his family and bring them to the hearing, but they were not there on the day of the hearing. Guinan's sister and mother testified at the habeas hearing in the District Court. Guinan's sister testified that she spoke to Guinan's attorney when she retained him and on at least one other occasion at which she told him she would be willing to testify for Guinan. Guinan's mother testified as follows:

Q. Ms. Guinan, did you have very many conversations with [Guinan's attorney] while you were—before the trial—

A. Yes.

Q. —and at the trial?

A. Like, you know, he'd call me once in a while to find out something maybe that he didn't know about Frankie or, you know, like—or tell me when he went to see him or.

Q. Ms. Guinan, during those conversations did he ever ask you whether you would be willing to testify?

A. He didn't want us to.

Q. Would you have been willing—

A. Sure I would, yes.

Transcript of Evidentiary Hearing at 67. Guinan's mother also testified that Guinan's counsel was aware of Guinan's difficulty with sickness as a child and his problems with alcohol in and out of prison. *Id.* at 68, 70.

The evidence adduced in the District Court did not lead it, and it does not now lead us, to discount the factual finding of the state courts. Guinan's counsel made a strategic decision after reasonable investigation that any favorable testimony given by a family member would be outweighed by the harmful effects of giving the state the opportunity to elicit the details surrounding Guinan's previous violent offenses. As the Court explained in *Strickland:*

> [S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. We believe counsel's decision was entirely reasonable and made after a reasonable investigation of the facts. Counsel's decision not to call family members to testify was not constitutionally deficient representation.

For the reasons stated, we reject Guinan's claim that his counsel was ineffective both in not presenting evidence as to Guinan's mental state and in not calling family members to testify at the sentencing phase.

### III.

■ Guinan next challenges, under *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), a jury instruction given during the penalty phase of trial. *Mills* held that an instruction that leaves a reasonable juror with the impression that a mitigating factor may not be considered unless the jurors unanimously find that it exists violates a defendant's Eighth

Amendment rights. *Mills*, 486 U.S. at 384, 108 S.Ct. at 1870. Guinan did not raise this issue in any of his state court proceedings nor did he argue it to the District Court in his petition for habeas relief. Because the record reveals no justification for failing to press this issue in a previous proceeding, Guinan is precluded from arguing the *Mills* claim to this Court.[4]

Guinan's *Mills* claim suffers from two procedural defects. First, as it was not raised in the state courts and state law would now bar Guinan from raising the issue in state court, federal habeas review of this claim is available only if Guinan can show "cause" sufficient to overcome his default and "prejudice" from that default, *Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2506, or can demonstrate that the error complained of resulted in his conviction despite his probable innocence, *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986). Second, because the issue was not raised in Guinan's habeas proceedings in the District Court, raising the issue now on appeal to this Court may constitute an abuse of the writ requiring dismissal of the claim. *See Smith v. Armontrout*, 888 F.2d 530, 540 (8th Cir.1989). Because we find that federal habeas review is procedurally barred due to Guinan's failure to raise the *Mills* claim in the state courts, we have no need to address the abuse-of-the-writ issue.

As Guinan concedes, his claim is governed by this Court's recent decision in *Stokes v. Armontrout*, 893 F.2d 152 (8th Cir.1989). In *Stokes*, the petitioner, who sought to challenge an instruction under *Mills* in his federal habeas petition but had not raised a *Mills* claim in state court,

argued that the "cause" factor of *Wainwright*, 432 U.S. at 87, 97 S.Ct. at 2506–07, was satisfied because the Supreme Court's holding in *Mills* constituted a novel constitutional principle. *See Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (recently announced rule of law that involves "a constitutional claim ... so novel that its legal basis [was] not reasonably available to counsel" satisfies *Wainwright*'s "cause" requirement). This Court, however, relying on an earlier decision, rejected the contention that *Mills* is the product of a constitutionally novel principle.

> If it be suggested that the point is a novel one ... the *Mills* opinion itself stands as refutation. The case is written as a standard application of the rule that juries must be free to consider any and all evidence as a mitigating factor. This has been a familiar feature of the legal landscape since 1978, when *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d. 973 (1978)] was decided.

*Stokes*, 893 F.2d at 155 (quoting *Smith v. Armontrout*, 888 F.2d at 545). As Guinan articulates no justification, other than the novelty concept rejected in *Stokes* and *Smith*, for not raising his *Mills* challenge in the state courts, federal habeas review of this claim is procedurally barred under *Wainwright*.

The only issue remaining is whether Guinan can overcome the procedural bar under the *Murray* probable innocence exception. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649–50. This exception applies by analogy to the penalty phase of the trial where the question becomes: "if the jury had been

4. The challenged instruction read as follows:
   If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 21, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all the evidence relating to the murder of John Pate McBroom.
   If you unanimously decide that a sufficient mitigating circumstance or circumstances ex-
ist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Department of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.
Instruction No. 22.
   Because Guinan's claim is procedurally barred, we express no opinion regarding the validity of this instruction under *Mills*.

told, in compliance with *Mills,* that any mitigating circumstance, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison?" *Smith,* 888 F.2d at 545; *accord Stokes,* 893 F.2d at 156. After reviewing the record in this case we are convinced that the only possible answer to this question is no. Guinan's counsel offered no mitigating evidence during either the guilt or the penalty phase of the trial. As we already have mentioned, the jury found three aggravating circumstances, each individually justifying the imposition of the death penalty. We have no difficulty concluding that the jury would have returned the death penalty even had they been instructed in the manner Guinan claims *Mills* requires, and we will not set aside his death sentence on this basis.

## IV.

■ Finally, Guinan argues that certain statements made by the prosecutor during closing argument constituted an Eighth Amendment violation as they impermissibly "led the jury to shirk responsibility for its decision." Appellant's Brief at 43. We do not agree.

During closing argument at the penalty phase of trial, the prosecutor said:

> You know, we—naturally, I'm sure you expect, we get a little tedious at times, lawyers do, especially in a capital murder case. Mr. Hampe and I both want to be sure the record in the case is proper, the defendant gets a fair trial. It's the Judge's responsibility to see that the rules are followed, but even as a prosecuting attorney, as the expert in the Court, I know if the rules aren't followed, no matter what we do, you know, that some appellate court later on may say, "The defendant didn't get a fair trial because you didn't do something right." So we all watch very carefully to try to be sure that every single thing is done right.

Trial Transcript at 621–22. Guinan argues that these statements violated his Eighth Amendment rights under *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86

L.Ed.2d 231 (1985). In *Caldwell,* the Court overturned a jury-imposed death sentence because of the prosecutor's statements during closing argument that the jury's decision "is not the final decision" and that "the decision you render is automatically reviewable by the Supreme Court." 472 U.S. at 325–26, 105 S.Ct. at 2638. The Court "conclude[d] that it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. at 2639. The Court has since clarified that "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams,* 489 U.S. 401, ——, 109 S.Ct. 1211, 1215, 103 L.Ed.2d 435 (1989).

We do not believe that the prosecutor's remarks in the instant case establish a *Caldwell* violation. The statements do not mention the jury's role in sentencing or otherwise; there is no suggestion that the ultimate responsibility for fixing Guinan's sentence rests elsewhere. The remarks instead emphasize the gravity of the proceedings in a capital murder trial and mention appellate review only in the context of mistakes made by the trial judge or the attorneys. While discussion of appellate review generally ought to be avoided in remarks addressed to the jury, we are certain that even the most unsophisticated layperson is aware that appellate courts exist and understands that one of their functions is to correct mistakes made at the trial court level. We therefore see no serious impropriety in the challenged portion of the prosecutor's closing argument.

We do not believe that the jury in any way was misled as to its role as sentencing decisionmaker. The prosecutor's remarks did not deprive Guinan of his Eighth Amendment rights and this claim provides Guinan with no basis for habeas relief.

## V.

After carefully reviewing the claims raised by Guinan, we are convinced that his

constitutional challenges to his conviction and sentence are without merit. Accordingly, we affirm the District Court's denial of his petition for a writ of habeas corpus.