_____

No. 95-2969EM
_____

Eric Adam Schneider,           *
                               *
            Appellant,         *
                               *  On Appeal from the United
    v.                         *  States District Court
                               *  for the Eastern District
                               *  of Missouri.
Paul Delo, *                   *
                               *
            Appellee.          *


_____

         Submitted:  April 8, 1996

            Filed:  May 30, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN and HANSEN, Circuit Judges.
_____

RICHARD S. ARNOLD, Chief Judge.


    Eric Adam Schneider, who is under sentence of death for the murders
of Richard Schwendemann and Ronald Thompson, appeals from the District
Court's[1] denial of his petition for habeas corpus.  We affirm.


                               I.


    In order to place Schneider's legal arguments in context, we


_____

    [1]The Honorable Stephen N. Limbaugh, United States District
Judge for the Eastern District of Missouri.

begin by briefly summarizing the facts of the crime.[2]

On January 7, 1985, Schneider and two friends, David Morgan and Charles Palmer, visited the home of Roland Johnson. While there, Schneider, who was carrying a sawed-off .22 caliber rifle, said that he "had to do a job or rob somebody." On January 11, Schneider borrowed twenty dollars from Johnson. He told Johnson that he was "planning something" and would repay Johnson on January 13. On the afternoon of January 12, Schneider, Palmer, and Morgan were seen leaving Palmer's apartment. They returned later that night, carrying personal property that had belonged to the victims, Richard Schwendemann and Ronald Thompson. Patricia Woodside, who had agreed to purchase the victims' video-cassette recorder, commented that Schneider had "made a killing." Schneider responded, "Yes. A couple of them."

The next morning, Schneider and Morgan discussed their crime with Patrick Schaffer. Schneider stated that after he, Palmer, and Morgan had arrived at the victims' home, they bound the victims and moved them to the basement. After Schwendemann started "getting tough," Schneider shot him in the back. Palmer slit Thompson's throat. Schneider and Palmer went upstairs and asked Morgan to watch the victims. But Morgan wandered away and when he returned, Thompson was missing. Morgan yelled for Schneider. Schneider and Morgan found Thompson staggering on the poolside patio and saw him fall into the pool.

When the police arrived at the victims' home, they discovered Schwendemann's body in the basement and Thompson's in the swimming pool. Schwendemann had two broken ribs and had been shot in the back and forehead with bullets from Schneider's gun. Thompson had

---

[2]For a more detailed description of the crime, see State v. Schneider, 736 S.W.2d 392 (Mo. 1987) (en banc), cert. denied, 484 U.S. 1047 (1988).

fifteen stab wounds to his neck, scalp, chest, side, and back.

The jury found Schneider guilty of two counts of first-degree murder, two counts of armed criminal action, first-degree robbery, and first-degree burglary. It recommended two sentences of death, finding that the murders were committed for the purpose of receiving money or some other thing of monetary value, that the murders involved torture or depravity of mind, and that Schneider committed the murders while carrying out a first-degree burglary.

The Missouri Supreme Court affirmed Schneider's convictions and sentence. State v. Schneider, 736 S.W.2d 392 (Mo. 1987) (en banc), cert. denied, 484 U.S. 1047 (1988). Schneider unsuccessfully sought post-conviction relief under Mo. S. Ct. R. 29.15, and the Missouri Supreme Court affirmed. Schneider v. State, 787 S.W.2d 718 (Mo.) (en banc), cert. denied, 498 U.S. 882 (1990). Schneider then filed a petition for a writ of habeas corpus, which the District Court denied. Schneider v. Delo, 890 F. Supp. 791 (E.D. Mo. 1995).

On appeal, Schneider raises three arguments. He claims that he was denied his Sixth Amendment right to effective assistance of counsel at the guilt and penalty phases of his trial; that the prosecutor made a number of improper statements during closing argument; and that the trial court unconstitutionally refused to permit him to introduce certain mitigating evidence at the penalty phase.

II.

Schneider argues that he did not receive effective assistance of counsel because his lawyer failed to have him examined by a psychiatrist and, at the penalty phase, presented only limited testimony regarding his social history.

A.

Before addressing the substance of Schneider's argument that his counsel was ineffective for failing to investigate his mental condition, we must first decide whether part of this claim is procedurally barred. In the appeal from the denial of his Rule 29.15 motion for post-conviction relief, Schneider alleged:

> The trial court clearly erred in denying appellant's motion to vacate sentence because counsel was ineffective in failing to seek a mental evaluation in mitigation of punishment . . .. Appellant was prejudiced in that the jury was denied important information on which to base a life sentence, particularly his capacity for feeling, remorse, and rehabilitation.

Resp. Ex. K at 11. The state contends that because Schneider mentioned only the prejudice he may have suffered during the penalty phase of his trial, he is procedurally barred from raising the issue of ineffective assistance of counsel at the guilt phase. See Engle v. Isaac, 456 U.S. 107, 129 (1982) ("when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice").

The requirement that federal habeas claims must have been presented in state court is not meant to trap a petitioner who has poor drafting skills. The stakes in habeas cases are too high for a game of legal "gotcha." Accordingly, in deciding whether a habeas claim has been fairly presented in state court, we "have not applied an unreasonable standard." Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir.), cert. denied, 502 U.S. 964 (1991). We require that the "same factual arguments and legal theories should be present in both the state and federal claims." Ibid.

Did Schneider present to the state courts the factual arguments and legal theories for his guilt-phase claim?  Hill v. Lockhart, 28 F.3d 832 (8th Cir. 1994), cert. denied, 115 S. Ct. 778 (1995), answers this question.  In state court, Hill had specifically addressed only the prejudice he had suffered at the penalty phase from his lawyer's failure to investigate his mental condition.  We rejected the state's argument that Hill had defaulted on his guilt-phase ineffective-assistance claim:

> Significantly, the legal analysis to be applied by this court to Mr. Hill's claim, i.e., ineffective assistance of counsel related to failure to present evidence of an extensive history of mental illness is the same regardless of which of the discrete aspects of the state court trial is at issue -- the guilt phase or the penalty phase.  The question of mental condition, moreover, cannot neatly be divided into sanity at the time of the offense as the relevant issue at the guilt phase, and mitigating evidence as the relevant issue at sentencing.  [A criminal defendant's] intellectual understanding of his actions and their gravity [is] clearly in issue at both phases of the proceedings.

Id. at 835 (citations omitted).  The same reasoning applies to this case, and we hold that Schneider's guilt-phase claim is not procedurally barred.

We now come to the substance of Schneider's ineffective-assistance claim.  In order to prevail, Schneider must show that his counsel's performance fell below professional standards and that his defense was prejudiced by his counsel's ineffectiveness.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984); United States v. Payne, 78 F.3d 343, 345 (8th Cir. 1996).

Schneider points out that his lawyer had access to the report from a court-ordered psychiatric examination which was performed in 1983, after Schneider had been arrested for burglary.  Although the

report concluded that Schneider did not suffer from any mental disease or defect and was competent to stand trial, the report did state that Schneider had cut his wrists while in prison and had a history of drug abuse, and that two of his sisters had undergone psychiatric treatment. Moreover, Schneider's school and military records indicated that he had sustained three head injuries when he was a child and that, as an adult, he had been diagnosed with hyperactivity and insomnia. Schneider argues that an effective lawyer would have responded to this evidence by arranging for another psychiatrist to examine Schneider.

We need not decide whether the performance of Schneider's counsel fell below the standard required by the Sixth Amendment. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, [that] course should be followed." Strickland, 466 U.S. at 697. A defendant is prejudiced by his lawyer's performance if "there is a reasonable probability [i.e. a probability sufficient to undermine confidence in the outcome] that, but for counsel's errors, the result of the [guilt or penalty] proceeding[s] would have been different." Id. at 694. Even if Schneider's counsel had been ineffective for failing to arrange a second psychiatric examination, our confidence in the outcome of the guilt and penalty phases of Schneider's trial would not be undermined.

During Schneider's state post-conviction proceedings, Dr. A. E. Daniel, a forensic psychiatrist, examined him. Dr. Daniel concluded that Schneider's speech, comprehension, thinking, and reasoning abilities were normal. Dr. Daniel did diagnose Schneider as suffering from attention-deficit disorder (formerly known as "hyperactivity"), a condition which, in Dr. Daniel's words, is manifested by a "failure to sustain attention on a given task,

particularly for children, school tasks."  P.C. Tr. Vol. I, 9.[3]

_____

[3]Attention-deficit disorder, which is usually diagnosed during childhood or adolescence, gives rise to the following symptoms:

(1) often fidgets with hands or feet or squirms in seat (in adolescents, may be limited to subjective feelings of restlessness)

(2) has difficulty remaining seated when required to do so

(3) is easily distracted by extraneous stimuli

(4) has difficulty awaiting turn in games or group situations

(5) often blurts out answers to questions before they have been completed

(6) has difficulty following through on instructions from others . . .

(7) has difficulty sustaining attention in tasks or play activities

(8) often shifts from one uncompleted activity to another

(9) has difficulty playing quietly

(10) often talks excessively

(11) often interrupts or intrudes on others . . .

(12) often does not seem to listen to what is being said to him or her

(13) often loses things necessary for tasks or activities at school or at home . . .

(14) often engages in physically dangerous activities without considering possible consequences (not for the purpose of thrill-seeking), e.g., runs into street without looking.

American Psychiatric Association, Diagnostic Criteria from DSM-III-R 56-57 (1987).

-7-

Schneider argues that there is a reasonable probability that

a jury would have concluded that because Schneider suffered from attention-deficit disorder and insomnia, he did not have the capacity to commit first-degree murder, _i.e._, "knowingly [to] cause[] the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020(1). The argument strikes us as outlandish. Four days before the murders, Schneider, who was carrying a sawed-off rifle, commented that because he was short of money, he "had to do a job or rob somebody." On the day of the murder, Schneider said that he was "planning something." The evidence shows that Schneider was quite capable of committing a crime after deliberation.

The question of whether there is a reasonable probability that evidence of Schneider's mental disorder would have changed the outcome of the penalty phase is somewhat different. At the penalty phase, a jury is not limited to examining the narrow issue of whether a defendant is capable of committing a crime. Instead, the jury may consider "evidence about the defendant's background and character [which] is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no excuse." Penry v. Lynaugh, 492 U.S. 302, 319 (1989) (citation omitted). Thus, even if evidence of a mental condition is not strong enough to convince a jury to accept an insanity or diminished-capacity defense, the evidence might cause that jury not to recommend a sentence of death. Eddings v. Oklahoma, 455 U.S. 104, 113 (1982).

In deciding whether, at the penalty phase, Schneider was prejudiced by his lawyer's failure to mention his attention-deficit disorder and insomnia, we are guided by our decision in Guinan v. Armontrout, 909 F.2d 1224 (8th Cir. 1990), cert. denied, 498 U.S. 1074 (1991). Guinan had something called "antisocial-personality disorder," a condition which caused him to be "aggressive,

impulsive, [and] unreliable in maintaining employment." Id. at 1229. We observed that Guinan did not suffer from any "thought disorder or possible schizophrenia" and concluded that "[w]hether evidence of this type would be considered mitigating by a jury is highly doubtful." Id. at 1230. See also Whitmore v. Lockhart, 8 F.3d 614, 617 (8th Cir. 1993) (lawyer was not ineffective for failing to introduce evidence, during the penalty phase, of the defendant's antisocial-personality disorder).

We reach the same conclusion in this case. Dr. Daniel testified that Schneider's symptoms are similar to those associated with antisocial-personality disorder. P.C. Tr. Vol. I, 11. Schneider's cognitive abilities are normal. He is neither schizophrenic nor bipolar. Cf. Antwine v. Delo, 54 F.3d 1357, 1368 (8th Cir. 1995) (defendant's penalty-phase defense was prejudiced by his lawyer's failure to discover evidence that the defendant suffered from bipolar disorder), cert. denied, 116 S. Ct. 753 (1996); Hill, 28 F.3d at 846 (defendant was prejudiced by counsel's failure to present evidence at the penalty phase of the defendant's paranoid schizophrenia and reliance on anti-psychotic drugs). Schneider is hyperactive and he suffers from insomnia. That is not nearly enough to undermine our confidence in the outcome of the penalty phase.

B.

Schneider also claims that his lawyer was ineffective for failing to present adequate evidence at the penalty phase relating to Schneider's social history. We disagree.

At the penalty phase, Schneider's mother was his only witness. Mrs. Schneider testified to her son's employment history, performance in school, artistic skills, helpfulness around the house, and the effect of her husband's alcoholism on the family. See Tr. 1927-44. Schneider asserts that his counsel should have

called other members of his family as witnesses and did only a superficial job of examining Mrs. Schneider.

Schneider's counsel explained that after interviewing several family members, he determined that they would not have been effective witnesses because they were too upset with the verdict of guilt. Schneider's family did testify in a state post-conviction hearing, after which the court observed that the "[f]amily members that testified in this proceeding were weak and offered little." Resp. Ex. J at 20. We conclude that Schneider's counsel made a reasonable strategic calculation, which we are not free to second-guess. See Laws v. Armontrout, 863 F.2d 1377, 1391 (8th Cir. 1988) (en banc) (counsel's decision not to have the defendant's family testify because they would not have been effective witnesses was reasonable), cert. denied, 490 U.S. 1040 (1989).

Furthermore, Schneider has not shown that he was prejudiced by his lawyer's failure to call additional witnesses or to examine Mrs. Schneider at greater length. Schneider points out that the jury never heard that he was devastated by the childhood death of his sister, Carolyn; started using drugs when he was 10 or 12 years old; loved music; helped his parents with chores; helped an elderly man who had fallen; and babysat for his nieces and nephews. This evidence is not enough to undermine our confidence in the outcome of the penalty phase.[4]

---

[4]Schneider also argues that, in considering his ineffective-assistance claims, the District Court should have expanded the record developed in state court by admitting into evidence a number of affidavits and by holding an evidentiary hearing. A habeas petitioner is entitled to expand the state-court record only if he can show cause for his failure to develop the facts in state court and prejudice from that failure. See Keeney v. Tamayo-Reyes, 504 U.S. 1, 7-12 (1992). We agree with the District Court that Schneider has made no such showing. See Schneider, 890 F. Supp. at 842-43. Nor has he demonstrated that this default should be excused because he is actually innocent of his crimes or of the death penalty. See Keeney, 504 U.S. at 12 (the cause-and-prejudice requirement does not apply if "a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing.")

III.

Schneider has brought two other groups of claims --- that, at trial, the prosecutor made a number of improper statements, and that the trial court unconstitutionally excluded relevant mitigating evidence during the penalty phase.

A.

Schneider contends that in the course of the prosecutor's closing argument during the penalty phase, the prosecutor improperly stated that he had knowledge of facts outside the record, he personally believed that the death penalty was an appropriate punishment, and that executing Schneider would deter crime. Schneider failed to raise these claims on direct appeal, and he has shown neither cause for this omission nor actual innocence. Consequently, the claims are procedurally barred.

Schneider also maintains that because David Morgan had told the prosecution that Charles Palmer was the only person who had stabbed Ronald Thompson, it was misleading for the prosecutor to say, during closing argument, that Schneider had killed Thompson. Schneider argues that the prosecutor's statement deprived Schneider of his right to due process because the statement was "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." Newlon v. Armontrout, 885 F.2d 1328, 1336 (8th Cir. 1989) (citation omitted), cert. denied, 497 U.S. 103 (1990).

Although this claim is not procedurally barred, it is without merit. Schneider admitted to the Missouri Supreme Court that "it was possible for [the conclusion that Schneider had killed

Thompson] to be inferred from the evidence."  Resp. Ex. E at 35.[5]  The Due Process Clause does not forbid prosecutors from drawing reasonable inferences from circumstantial evidence.  <u>United States v. Karam</u>, 37 F.3d 1280, 1289 (8th Cir. 1994), <u>cert.</u> <u>denied</u>, 115 S. Ct. 1113 (1995).

B.

Finally, Schneider asserts that two evidentiary rulings deprived him of his Eighth Amendment right to present evidence at the penalty phase regarding his "character or record and any of the

---

[5]During his guilt-phase closing argument, the prosecutor said that although Thompson's body was found with 15 stab wounds, there had been testimony that Thompson had been stabbed only once, when he was in the basement.  He explained why he thought that Schneider had inflicted the remaining wounds:

> After they left [Thompson] with the wound not being fatal he was able to get up.  The knife was either still sticking in his neck or laying there.  He picked it up as a defensive weapon and walked out to the rear basement window, dropped the knife down, climbed out the window.  Because of the one wound.  He couldn't have done that with all of the other wounds in his body.

> He goes out to the pool.  David Morgan comes downstairs and, according to Patrick, as soon as David finds he's gone yells out for who?  He yells out for Eric.

> He goes, "Eric, he's gone."  Why does he yell for Eric?  Because Eric is in control of everything.  He's in charge.

> And then, Eric goes out and they find Mr. Thompson out by the pool and he takes, ladies and gentlemen, this particular knife and he's finished off at the pool.

> That's the only way the murder could have happened.  It would have been impossible for just the one wound -- with all of those wounds for him to have been able to get out of the house, climb out that window and get out to the pool.

Tr. 1813-14.

-13-

circumstances of the offense. . .." Eddings, 455 U.S. at 110 (quoting Lockett v. Ohio, 438 U.S. 586, 604 (1978) (plurality opinion)).

Schneider maintains that the trial court should have allowed him to present evidence that David Morgan had entered into a plea bargain in which the state had agreed to recommend a sentence of 30 years. In this appeal, Schneider has not articulated any reason why Morgan's sentence was relevant mitigating evidence. Because Morgan did not testify, the plea agreement was not relevant as a means to impeach Morgan's credibility. On direct appeal, Schneider did allege that under Lockett and Eddings, the plea agreement was relevant because the jury might have concluded that because Morgan received a 30-year prison term, it would be unfair to sentence Schneider to death. But, as the Missouri Supreme Court held, the disposition of Morgan's case had nothing to do with Schneider's "character or record" or with the "circumstances of the offense." See Schneider, 736 S.W.2d at 395-97.

Schneider also contends that he should have been permitted to introduce evidence that Morgan had told the prosecution that Schneider did not kill Ronald Thompson. However, in state court, Schneider objected only to the exclusion of evidence that the state had agreed to recommend that Morgan receive a 30-year sentence. He never raised a claim regarding Morgan's statement.[6] Because he has shown neither cause for this default nor actual innocence, the

---

[6]We reject Schneider's argument that because Morgan would never have made his statement if he had not struck a plea bargain, his claim that he should have been allowed to introduce Morgan's statement into evidence is part of his claim that the terms of the plea bargain should have been admitted. The statement was not contained in the plea agreement; the two are discrete pieces of evidence. Moreover, the reason that Schneider thinks Morgan's statement was admissible -- to cast doubt on the prosecution's argument that Schneider was the ring leader who planned the burglary and stabbed Thompson -- bears no resemblance to his argument as to why the plea bargain was relevant.

-14-

claim is procedurally barred.

IV.

For these reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.