HEANEY, Circuit Judge
dissenting.
Trial counsel for Stanley D. Lingar was clearly ineffective in telling the jury in the sentencing phase of Lingar’s trial that it could only consider statutory mitigating factors. The jury could and should have been given the opportunity consider all mitigating factors, including a history of sexual abuse, substance abuse, and blackouts; a mental evaluation revealing borderline mental retardation, acute paranoid and depressive disorders; expression of remorse; and indications that Lingar was a good candidate for rehabilitation. Lin-gar was clearly prejudiced by his counsel’s failure to develop and present this evidence. There is no reasonable probability that a jury advised of these circumstances would have imposed the death sentence on this 20-year-old, mentally retarded and mentally disturbed young man.
Lingar was charged with first-degree murder. The case went to trial March 12, 1986, and proceeded in two phases. At the guilt phase of the trial, the primary evidence of the events leading up to and including the murder came from the testimony of David Smith as part of his plea agreement entered into with the state. Given that no other person witnessed the crime, the factual account upon which the finding of guilt was predicated was derived almost exclusively from Smith’s narrative. During the guilt phase, the defense only presented one witness, one of the hitchhikers, who testified that although clearly drunk, Lingar and Smith were not swerving. Without Lingar’s permission, defense counsel conceded during closing arguments that Lingar was guilty of second-degree murder. (See Appellant’s Br. at 4.) Counsel’s strategy was to rely on the defense of voluntary intoxication in order to negate the deliberation element required for a conviction of first-degree murder.[1] However, voluntary intoxication was only recognized for five years in the state of Missouri from January 1, 1979 to October 1, 1984. See Mo.Ann.Stat. § 562.076 (West 1999); State v. McGreevey, 832 S.W.2d 929, 931 (Mo.Ct.App.1992) (giving history of statute). Quite obviously then, the jury was not instructed on voluntary intoxication, and in fact the prosecutor stated that alcohol abuse was not a shield to defendant’s conduct.
At the end of the punishment phase of the trial, the jury imposed a death sentence, finding that the murder was out *463 rageously and wantonly vile, horrible or inhuman in that it involved torture or depravity of mind, and that the murder was committed while petitioner was engaged in a kidnapping. See State v. Lingar, 726 S.W.2d 728, 731 (Mo.1987) (en banc) (citing Mo.Rev.Stat. §§ 565.032.2(7) and (11) (Í986)). Lingar appealed the conviction and sentence to the Supreme ’ Court of Missouri, which affirmed. See id., cert. denied, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). Lingar sought post-conviction relief in the circuit court. This relief was denied and the denial was affirmed by the Missouri Supreme Court. Lingar v. State, 766 S.W.2d 640 (Mo.1989) (en banc), cert. denied, 493 U.S. 900, 110 S.Ct. 258, 107 L.Ed.2d 207 (1989).
On October 18, 1989, Lingar filed a pro se petition for habeas relief pursuant to 28 U.S.C. § 2254. United States District Court Judge Clyde S. Cahill entered an Order Staying Execution of Death Penalty, appointed counsel for Lingar, and granted Lingar’s motion to hold proceedings in abeyance pending completion of state ha-beas corpus proceedings. On March 3, 1992, Lingar filed a petition for writ of habeas corpus pursuant to Missouri Supreme Court Rule 91. The Missouri Supreme Court denied the petition in April of 1992. In June of 1992 Lingar filed a motion with the same court to recall the mandate and the court denied that motion the same month. In December 1992, Judge Cahill granted Respondent’s renewed motion to vacate stay of proceedings and set a briefing schedule. Lingar filed a First-Amended Petition for Writ of Habeas Corpus on March 1, 1993. In June of 1993, the case was transferred to United States District Court Judge Jean C. Hamilton. Lingar asserted eight grounds of error. More than three years later, and without the benefit of an eviden-tiary hearing, Judge Hamilton found that most of the claims were proeedurally defaulted, or in the alternative were merit-less, and denied Lingar’s remaining claims on the merits. Judge Hamilton filed her Memorandum and Order August 2, 1996.
Lingar filed an application for certificate of appealability in October 1996. In October 1997, the application was granted in part, permitting Lingar .to appeal Judge Hamilton’s order on two separate grounds, comprising five issues: first, that the trial court violated Eighth and Fourteenth Amendment rights when it admitted during the penalty phase highly prejudicial testimony regarding Lingar’s sexual orientation; second, that his counsel was ineffective in: a) admitting during closing argument Lingar’s guilt of second-degree murder; b) basing. Lingar’s defense to the deliberation element of first-degree murder on the obsolete affirmative defense of voluntary intoxication; c) mistakenly informing the jury during the sentencing phase that the jury could not consider nonstatutory mitigating circumstances; and d) failing to properly investigate and present evidence of mitigating circumstances, including psychiatric evidence.
While I concur in the majority’s opinion as to the first three grounds, I cannot agree that failure on the part of trial counsel to ascertain and present substantial non-statutory mitigating evidence at the penalty phase of the trial constitutes effective assistance of counsel and therefore respectfully dissent.
In order to establish a claim for ineffective assistance of counsel, Lingar was required to show that his attorney’s performance fell below the “range of competence demanded of attorneys in criminal cases,” Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that such deficient performance caused him to suffer actual prejudice — i.e. that but for the ineffective performance, there was a reasonable probability that the jury would not have imposed the death penalty, see id. at 692, 104 S.Ct. 2052. I believe that Lingar made such a showing.
During closing argument at the penalty phase, defense counsel stated that the jury instructions “tell you what the law is,” and *464 that in considering mitigating circumstances “the defendant is limited to what the statutory mitigating circumstances are. We may have other mitigating circumstances but they are not involved in the statute and we’re not allowed to present them.” (Trial Tr. at 437-39.) This represents a complete misstatement of the law regarding nonstatutory mitigating circumstances. See Penry v. Lynaugh, 492 U.S. 302, 327-28, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (jury must be permitted to consider any mitigating factors); Hitchcock v. Dugger, 481 U.S. 393, 397, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987) (vacating death sentence where jury was instructed not to consider nonstatutory mitigating circumstances).
The district court nonetheless ruled that this failure did not constitute prejudice under Strickland since the trial court cured any misapprehension on the part of the jury with its statement that the jurors could consider “any circumstances which [they found] from the evidence in mitigation of punishment.” (Appellant’s Br. at 35.) The majority’s characterization of counsel’s misstatement as harmless error is based on the same rationale. See ante, at 461 (citing Griffin v. Delo, 33 F.3d 895, 906 (8th Cir.1994); Girtman v. Lockhart, 942 F.2d 468, 474 (8th Cir.1991)). I cannot accept this rationale because the jury had no mitigating evidence to consider. Because of counsel’s misunderstanding of the law, he failed to investigate and develop nonstatutory mitigating circumstances including a background of sexual abuse, serious alcohol abuse, a history of blackouts, mental problems, and documented remorse for the crime. I repeat, the fact that the jury was instructed by the court that it could consider “any circumstances” is beside the point, as defense counsel neither developed nor presented any such evidence.[2]
It is clear that due to ineffective assistance of counsel, the sentencer in this capital case was not allowed to weigh in mitigation several features of defendant’s character and circumstances that supported a sentence of less than death. See Eddings v. Oklahoma, 455 U.S. 104, 110, 112, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). If the sentencer is to make an individualized assessment of the appropriateness of the death penalty, “evidence about the defendant’s background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.” Penry v. Lynaugh, 492 U.S. 302, 319, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (quoting California v. Brown, 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O’Connor, J., concurring)).
“Even if evidence of a mental condition is not strong enough to convince a jury to accept an insanity or diminished-capacity defense, the evidence might cause that jury not to recommend a sentence of death.” Schneider v. Delo, 85 F.3d 335, 340 (8th Cir.1996) (citing Eddings, 455 U.S. at 113, 102 S.Ct. 869). The circumstances characterizing Lingar’s mental capacity compel the conclusion that this is such a case. The ease law presents a spectrum of decisions concerning whether an attorney’s failure to present mitigating evidence constitutes ineffective assistance. *465 See Schneider, 85 F.3d at 340-41 (no ineffective assistance for failing to introduce evidence that defendant suffered from an attention-deficit disorder and insomnia); Guinan v. Armontrout, 909 F.2d 1224, 1229 (8th Cir.1990) (same regarding an anti-social personality disorder); Hill v. Lockhart, 28 F.3d 832, 846-47 (8th Cir.1994) (ineffective assistance for failing to introduce at penalty phase evidence that defendant suffered from paranoid schizophrenia and reliance upon anti-psychotic drugs); Antwine v. Delo, 54 F.3d 1357, 1368 (8th Cir.1995) (same regarding defendant’s bipolar disorder). The evidence places Lingar squarely within those cases finding ineffective assistance.
The courts in Schneider and Guinan found that because the defendant’s cognitive abilities were “normal,” even a constitutionally ineffective failure to order further psychiatric examination or present more detailed testimony did not sufficiently undermine confidence in the outcome to permit a finding of prejudice. Schneider, 85 F.3d at 339-41; Guinan, 909 F.2d at 1229-30. While the defendant in Guinan also had a history of alcohol abuse, he did not suffer from any mental illness. See 909 F.2d at 1230 (“[Tjhere is simply no evidence ... that Guinan’s mental problems can be characterized as anything more than personality disorders evidenced by violent and inappropriately aggressive behavior.”). In Lingar’s case, evaluations indicated that he was suffering from a “severe mental disorder” and was borderline retarded. Thus, Guinan and Schneider are distinguishable.
More analogous are the decisions in Antwine and Hill. In Antwine, the court concluded that there was a reasonable probability that the result in the penalty phase of a capital-murder trial would have been different had counsel discovered and developed evidence concerning the defendant’s bipolar disorder. 54 F.3d at 1368. However, that case was decided under a previous death-penalty statute, repealed before Lingar’s trial, in which the negative vote of one juror would automatically have meant a life sentence. See id.
In Hill, the court initially observed that “[ejvidence of ... emotional disturbance is typically introduced by defendants in mitigation.” 28 F.3d at 844 (quoting Eddings, 455 U.S. at 115, 102 S.Ct. 869)). It then recounted the history of the case, finding that the lawyer’s incompetence resulted in the failure to introduce mitigating evidence regarding defendant’s history of psychotic episodes; and the fact that • during the events charged, defendant had ceased taking medication that had improved his behavior. Id. at 845. Based on the evidence the jury did not have an opportunity to hear, the court concluded that there was a reasonable probability that the jury would have found additional mitigating circumstances and these circumstances would have outweighed aggravating circumstances. See id. at 846.
This case presents a striking parallel. Lingar argues that if his attorney had adequately researched and presented mitigating evidence, the jury would have heard evidence regarding 1) a history of sexual abuse; 2) a history of alcohol abuse; 3) a history of blackouts; 4) that defendant has severe mental problems; 5) that he is a candidate for rehabilitation; and 6) that he had expressed remorse for the crime. (Appellant’s Br. at 35.)
Lingar’s contention is supported by affidavits indicating that Lingar suffered from sexual abuse at the hands of his cousin from the age of five into his teens. (See Appellant’s Br. at 49-50.) ■ The jury also would have heard evidence that Lingar experienced mental dysfunction. A pretrial examination revealed that Lingar was “borderline” mentally retarded with borderline intellectual functioning and a borderline IQ score. Additionally, a personality inventory administered by the Missouri Department of Corrections revealed the following DSM-III diagnoses: clinical syn *466 dromes including acute paranoid disorder,[3] generalized anxiety disorder,[4] and dys-thymic disorder;[5] and avoidant personality.[6] The report concluded that Lingar suffered from, “a severe mental disorder” and recommended further professional observation and care. (See Appellant’s Br. at 3.) The report issued by the doctors responsible for the pre-trial examination should have suggested to his attorney the need for further evaluation, since one of the statutory mitigating circumstances available under Missouri law inquires into whether “the murder ... was committed while the defendant was under the influence of extreme mental or emotional disturbance.” Rev.Mo.Stat. § 565.032.3(2) (1999). Given the clear duty of counsel to investigate and provide an adequate psychiatric evaluation of state of mind in order to provide mitigating circumstances, there is no question but that trial counsel’s performance at the penalty phase was insufficient within the meaning of Strickland. The finding that Lingar suffered from a “severe mental disturbance” should have induced counsel to do further investigation and to develop and present mitigating evidence. Here, trial counsel’s performance is directly analogous to that in Hill.
Lingar’s circumstances are also parallel to Hill in that the failure to present available mitigating circumstances satisfied the prejudice prong of Strickland analysis. See 466 U.S. at 694, 104 S.Ct. 2052 (prejudice occurs where confidence in outcome is undermined such that “but for counsel’s unprofessional errors, result of the proceeding would have been different”). Evidence not presented may have led the jury to find the statutory mitigating circumstance, which was submitted, and other mitigating circumstances that may have been submitted if counsel had been aware of the evidence. Lingar argues that there is a reasonable probability that this would have been enough to offset the two aggravating circumstances found by the jury. (Appellant’s Br. at 55); see Hill, 28 F.3d at 846. I agree.
Here, as in Hill, the jury in a capital case was deprived of critical information regarding severe mental disorders suffered by the defendant. See 28 F.3d at 845. The Hill court credited an expert lawyer’s testimony that “in cases where I could explain to the jury why a crime occurred ... they were more willing to impose a sentence of life imprisonment than in situations where I could not give any explanation for what happened and they thought the defendant was just mean.” Id. at 846. This common-sense observation is equally applicable in the instant case. Had the jury been apprised of Lingar’s life circumstances, there exists a reasonable probability that it would have found mitigating circumstances to outweigh aggravating circumstances and therefore would have voted for life imprisonment. Because I cannot in good conscience join in the majority’s certainty that this information would have made no difference to the question of whether Stanley David Lingar should be put to death by the state, I respectfully dissent. In my *467 view, we should promptly issue a writ of habeas corpus requiring the state of Missouri to grant Lingar a new trial within 120 days as to the penalty that should be imposed. Failing that, the state should be required to release Lingar.

. During the course of the day in question, Lingar and Smith drank three and a half bottles of wine and thirty-six beers.

. The majority contends that "[c]ontrary to Lingar's selective quotation from defense counsel’s closing argument, the record shows Lingar's trial attorney knew he could present nonstatutory mitigating evidence and did so.” Ante, at 460. I cannot share this interpretation of trial counsel’s closing argument. At no time during the penalty phase did Lingar’s counsel present evidence of his client's background of sexual abuse, substance abuse, and blackouts; a mental evaluation revealing borderline mental retardation, acute paranoid and depressive disorders; expressions of remorse; and indications that Lingar was a good candidate for rehabilitation. All he did at the end of his closing argument was remind the jury that Lingar’s family had said he was a good boy. This is a far cry from identifying and developing the above-listed evidence.

. “Acute paranoid disorder” is a psychosis marked by symptoms including delusions, hallucinations, and grossly disorganized behavior. The diagnosis is reserved for situations in which there is insufficient information to make a more particularized diagnosis. See Diagnostic and Statistical Manual of Mental Disorders 211 (3d ed. rev.1987) ("DSM-III-R”).

. “Generalized anxiety disorder” is marked by "unrealistic or excessive anxiety and worry about two or more life circumstances.” DSM-III-R, at 251.

. "Dysthymic disorder” involves "a chronic disturbance of mood” and is associated with symptoms such as insomnia, low energy, poor self-esteem, poor concentration, and feelings of hopelessness. It frequently results from a preexisting, chronic, non-mood disorder such as substance dependence. See DSM-III-R, at 230.

. "Avoidant personality” is characterized by a "pervasive pattern of social discomfort, fear of negative evaluation, and timidity.” Generally, such persons have no close friends or confidants. See DSM-III-R, at 352-53.